UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IRON DYNAMICS, A DIVISION OF STEEL  ) | |
| DYNAMICS, INC., f/k/a IRON DYNAMICS,  ) | |
| INC.,                                                                    ) | |
|       Plaintiff,                                          ) | |
|                                 ) | |
|       v.                                                       ) | CAUSE NO. 1:06-CV-357 |
|                                 ) | |
| ALSTOM POWER, INC.,                                   ) | |
|                                 ) | |
|       Defendant.                                        ) | |

## **OPINION AND ORDER**

### **I.  INTRODUCTION**

Plaintiff Iron Dynamics, a division of Steel Dynamics, Inc., f/k/a Iron Dynamics, Inc. ("IDI"), brings this suit as a result of its purchase of certain industrial equipment from Defendant Alstom Power, Inc. ("Alstom"), alleging that Alstom breached the purchase agreement for the equipment and, more particularly, breached certain express and implied warranties arising therein. (Docket # 1.)  Alstom now moves for partial summary judgment (Docket # 34), contending that IDI's claims for breach of the implied warranties of merchantability and fitness for a particular purpose and its request for consequential and incidental damages are barred as a matter of law, since Alstom expressly disclaimed these implied warranties and specifically excluded consequential and incidental damages in the purchase agreement.

For the following reasons, Alstom's arguments are meritorious, and thus its motion for partial summary judgment will be GRANTED.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

IDI is a division of Steel Dynamics, Inc., which is the "nation's fifth largest producer of carbon steel products with 2006 annual revenues of $3.2 billion and annual shipments of 4.7 million tons." (Alstom's Reply to Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. at 5 n.2 (quoting www.steeldynamics.com (last visited on September 30, 2007)).) Alstom is a company engaged in the business of designing and supplying specially designed heat transfer equipment. (Aff. of Greg Homoki ¶ 2.)

On or about March 5, 2003, IDI contacted Alstom to request a proposal for the improvement of IDI's iron-based reduction process. (Compl. ¶ 8.) During the next several weeks, the parties negotiated the terms of sale and exchanged drafts of proposed purchase agreements. (Homoki Aff. ¶¶ 6, 7.) The negotiations culminated in an agreement wherein Alstom agreed to design, fabricate, and deliver two hot gas recuperators to IDI, together with the related drawings, manuals, instructions, and spare parts (collectively, the "Equipment") for an aggregate purchase price of $700,000. *(Id.* ¶¶ 7, 13; Aff. of David Bednarz ¶ 2.)

On April 11, 2003, the parties memorialized their negotiations by signing a twenty-seven page agreement entitled "Purchase Order Number: FE 008508 Contract for the Supply of a Hot Gas Recuperator Between [IDI] and [Alstom]" (the "Agreement"). (Homoki Aff. ¶ 8, Ex. A.) In the Agreement, Alstom made certain express warranties and performance guarantees to IDI and specifically disclaimed all other warranties and guarantees, including the implied warranties of

---

[1] For summary judgment purposes, the facts are recited in the light most favorable to IDI, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

merchantability and fitness for a particular purpose.[2] (*Id*. at Ex. A ¶ 14.)  In addition, Alstom limited its maximum liability under the Agreement to the purchase price of the Equipment and specifically excluded liability for any "loss of profit, loss of use, loss of production, loss of contract or for any financial or economic loss or for any special, incidental, indirect, or consequential damage whatsoever." (*Id*. at Ex. A ¶ 13.4.1.)

In June 2003, two months after signing the Agreement, Alstom sent a memo to one of its suppliers regarding certain materials it ostensibly obtained to fabricate the two recuperators. (Aff. of Thomas Herr Ex. A, AL-01071.)  The document stated:

> If this were an ASME code stamped vessel, the material would have to be rejected.  However, since this is not an ASME code stamped vessel, we can accept the material as is, but we must recognize that the creep rupture life of the unit will be significantly decreased. . . .  This increases our risks and detracts from the usefulness to the customer.  *The quality of the equipment is reduced significantly*.

(*Id*. (emphasis added).)

On or about September 12, 2003, the Equipment was delivered to IDI's plant in Butler, Indiana. (Compl. ¶¶ 4, 15.)  The Equipment was then installed at the plant by a third party according to the instructions provided by Alstom, and Alstom supervised the installation process.

---

[2] Section 14.8 of the Agreement states:

THE EXPRESS WARRANTIES THE SELLER MAKES TO THE BUYER IN THIS ARTICLE 14 AND THE PERFORMANCE GUARANTEE, IF ANY, REFERRED TO IN SECTION 14.7 ARE THE ONLY WARRANTIES OR GUARANTEES THE SELLER WILL MAKE.  THERE ARE NO OTHER WARRANTIES OR GUARANTEES, WHETHER STATUTORY, ORAL, WRITTEN, EXPRESS, OR IMPLIED.  IN PARTICULAR, THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  THERE ARE NO STATUTORY, ORAL, OR IMPLIED CONDITIONS.  THERE ARE NO IMPLIED WARRANTIES AGAINST REDHIBITORY DEFECTS, VICES, OR DEFECTS, HIDDEN OR OTHERWISE.

(*Id*. at Ex. A ¶ 14.)

(*Id*. ¶ 4; Homoki Aff. ¶ 15.)

### *A. The Dispute*

Within two weeks of the installation of the Equipment, IDI realized that the Equipment was not functioning in accordance with the specifications and performance guaranties in the Agreement. (Compl. ¶ 17.) IDI notified Alstom of the problems and, on February 25, 2004, Alstom rendered an internal report documenting the issues with the Equipment:

> The almost complete loss of the tube sheet refractory is unusual in our experience. The refractory was generously anchored and the anchors did not fail. We have supplied over a hundred units with the same brand of refractory (KS-4) and with similar flue gas inlet temperatures (typically 1550 F to 1800 F) and have not seen this extensive a failure in such a short operating time. . . . The exact root cause of the failure cannot be determined from the evidence available. It could have been caused by any combination of the possible causes given above.

(Herr Aff. Ex. A, AL-00525.) That same month, IDI sent an e-mail to Alstom stating that IDI's testing indicated that "the damage is the result of incorrect material selection for this application and that the mechanical failure occurred when the material became too thin to handle the stress." (*Id*. at AL 01199.) As reported by Greg Homoki, the Director of Alstom, the tubing did in fact fail:

> My conclusion was that falling chunks of refractory blocked or restricted flows through several tubes, especially where the failure in unit 1 occurred . . . . The failed tubes were pulled from the tubesheets. On cool down, broken tube ends hung up on the tubesheet, putting the tubes under compression and resulting in the buckling/distortion noted.

(*Id*. at AL 01216.)

Alstom then recommended that IDI install sleeves on the tubing of the Equipment, acknowledging, however, that this would be only a temporary solution. (Bednarz Aff. ¶ 6.) Despite its recommendation, Alstom refused to pay for the temporary fix. (*Id*.) On or about May

7, 2004, Dave Bednarz, the Plant Manager of IDI's Butler facility, sent an e-mail to Homoki explaining that because of Alstom's refusal to pay, IDI was forced to fund the materials and installation of the changes that Alstom had recommended. (*Id.* ¶ 7, Ex. A.) The e-mail also reiterated the financial repercussions that IDI would face if the Equipment was not fixed and/or did not operate properly. (*Id.* ¶ 9, Ex. A.) Nonetheless, Alstom simply continued to suggest the sleeving option to IDI, never offering to pay for it and never suggesting a permanent solution. (*Id.* ¶ 10.)

Consequently, on or about August 10, 2006, IDI sent a letter to Alstom requesting to exercise the "Make Good Clause" in the Agreement and seeking the return of the Equipment's purchase price. (*Id.* ¶ 14, Ex. B.) The letter emphasized that the Equipment was still not functioning properly and that IDI was experiencing the same problems with the Equipment that it had experienced at the outset. (*Id.*) One week later, Alstom responded to IDI's request, emphasizing that Alstom had met all of its contractual obligations and that IDI's requests were "unreasonable." (*Id.* ¶ 14, Ex. C.)

### B. *The Instant Suit*

IDI filed this action against Alstom on November 3, 2006, alleging, among other things, that Alstom had breached the implied warranties of merchantability and fitness for a particular purpose. (Compl. ¶¶ 48-65.) In its Complaint, IDI asserts that Alstom's disclaimer of the implied warranties "does not apply because the express warranties have failed of their essential purpose" and consequently seeks all remedies available under the Uniform Commercial Code (UCC). (*Id.* ¶¶ 51, 52, 61, 62.) Specifically, IDI seeks damages of approximately $8.8 million in this action, claiming $862,344.14 for recuperator repairs, $4,870,727.07 for lost revenue, and

$3,114,525.38 for excess natural gas usage. (IDI's Rule 26(a)(1)(A) Disclosures at 5, Ex. A.)

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial."[3] *Id.* at 771.

### IV. DISCUSSION

In its motion for partial summary judgment, Alstom contends that IDI's claims of breach of the implied warranties of merchantability and fitness for a particular purpose are barred as a matter of law because Alstom properly disclaimed the implied warranties in the Agreement,

---

[3] The parties do not dispute that the claims subject to this motion are governed by Indiana law, specifically Indiana's version of the UCC. *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 671 (7th Cir. 2002). Consequently, the Court will "apply the law that we believe the Supreme Court of [Indiana] would apply if the case were before the tribunal rather than before this [C]ourt." *Help at Home Inc. v. Med. Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001).

emphasizing that any purported failure of the express warranties and any breach of the Agreement by Alstom is immaterial to the effectiveness of such disclaimer. Alstom also contends that any purported failure of the express warranties is of no consequence to the limitation of liabilities provision in the Agreement and, furthermore, that IDI has utterly failed to show that such limitation of liabilities is unconscionable. Alstom's arguments, which ultimately are persuasive, will each be discussed in turn.

### A. *IDI's Claims for Breach of the Implied Warranties of Merchantability and Fitness for a Particular Purpose Are Barred as a Matter of Law*

Under Indiana's version of the UCC "[t]he seller in all cases is free to disclaim warranties in the manner provided in Section 2-316." Ind. Code § 26-1-2-719 cmt. 3. To disclaim an implied warranty of merchantability, the disclaiming language must specifically include the term "merchantability" and must be "conspicuous" within the text of the Agreement. Ind. Code § 26-1-2-316(2). Similarly, to disclaim an implied warranty for fitness for a particular purpose, the disclaiming language must be in writing and must appear conspicuously within the text of the Agreement. *Id*. Contract language is sufficient to disclaim implied warranties when it contains similar language to that provided in the statute and is articulated in all capitalized text larger than the rest of the text on the page. *Wilson v. Royal Motor Sales, Inc*., 812 N.E.2d 133, 137 (Ind. Ct. App. 2004); *Roberts v. Homelier Div. of Textron, Inc*., 649 F. Supp. 1440, 1444-45 (N.D. Ind. 1986). Whether the disclaimer is satisfactorily conspicuous is a question of law to be determined by the Court. Ind. Code § 26-1-1-201(10).

Here, the disclaimer of the implied warranties is articulated in all capitalized text in the body of the Agreement and expressly states that "THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." (Homoki Aff.

Ex. A ¶ 14.8.)  Thus, it is quickly evident that Alstom adequately disclaimed the implied warranties of merchantability and fitness for a particular purpose.  In fact, IDI does not even contend that Alstom failed to properly disclaim the implied warranties of merchantability and fitness for a particular purpose or that the disclaimer of these implied warranties is unconscionable;[4] rather, it alleged in its Complaint that the waiver of these implied warranties "does not apply because the express warranties have failed of their essential purpose." (Compl. ¶¶ 51, 61.)

1. <u>Alstom's Disclaimer of Implied Warranties Is Not Invalidated by a Failure of the Essential Purpose of Its Express Warranties</u>

In advancing its initial legal premise – that is, that Alstom's disclaimer of the implied warranties is invalidated by an ineffectiveness of the express warranties,[5] IDI's "apparent impression of the law is that when a limited remedy fails of its essential purpose the disclaimed warranties are revived." *Ritchie Enters. v. Honeywell Bull, Inc*., 730 F. Supp. 1041, 1047 (D. Kan. 1990).  This perspective confuses the distinction made in the UCC between disclaimers of warranties, Ind. Code § 26-1-2-316, and limitations of remedies, Ind. Code § 26-1-2-719.  "[T]hese two devices in theory constitute two separate mechanisms for eliminating responsibility for produce quality." *Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 952-53 (Ind. Ct. App. 1982).  "A disclaimer or modification of warranty eliminates the quality commitment.  It limits the circumstances in which the seller or manufacturer may be deemed to be in breach of warranty."

---

[4] Arguments not presented to the court in response to a motion for summary judgment motion are deemed waived. *See, e.g.*, *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003).

[5] IDI failed to develop this argument in its response brief, and thus the Court deems IDI to have waived its initial legal premise. *See, e.g.*, *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) (articulating that cursory and undeveloped arguments are deemed waived).  Nonetheless, the Court will briefly address IDI's initial legal premise for purposes of completeness, concluding that it also fails on the merits.

*Id*. "A limitation of remedy, on the other hand, acknowledges the quality commitment but restricts the remedy available once a breach has been established." *Id*.; *see also F.C. Finance Corp. v. Murphies*, 632 F.2d 413, 420 (5th Cir. 1980) ("Warranty disclaimer is a defense to the existence of a cause of action, while the consequential damage limitation merely restricts remedies once the breach has been established.").

Moreover, IDI has utterly failed to provide any legal precedent that suggests disclaimed implied warranties are revived by a failure of the essential purpose of the express warranties. In fact, when a limited remedy fails of its essential purpose, Section 2-719 expressly abrogates only the remedy limitation and not the warranty disclaimers. Ind. Code § 26-1-2-719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in IC 26-1."); *see Ritchie Enters.*, 730 F. Supp. at 1047. This distinction is highlighted in Official Comment 3 to Section 2-719, which after explaining that limiting consequential damages may be unconscionable, states: "The seller in all cases is free to disclaim warranties in the manner provided in Section 2-316." Ind. Code § 26-1-2-719(2) cmt. 3; *see Ritchie Enters.*, 730 F. Supp. at 1047.

In that vein, several courts have expressly articulated that "disclaimers valid under 2-316, [the section addressing the exclusion or modification of warranties], are also valid under 2-719, [the section addressing the contractual modification or limitation of remedies]." *Ritchie Enters.*, 730 F. Supp. at 1047; *see also Earl Brace & Sons v. CIBA-Geigy Corp.*, 708 F. Supp. 708, 711 (W.D. Penn. 1989). In essence, "[t]he resulting analysis is academic. There can be no breach where the warranty has been disclaimed pursuant to Section 2[-]316 . . . ." *Earl Brace*, 708 F. Supp. at 711; *see also Ritchie Enters.*, 730 F. Supp. at 1047-48; *Am. Elec. Power Co. v.*

*Westinghouse Elec. Corp.*, 418 F. Supp. 435, 451-54 (D.C.N.Y. 1975) (upholding the disclaimer of implied warranties though a material issue of fact existed as to whether the express warranties failed in their essential purpose). Stated more succinctly, there simply can be no breach of a warranty that does not exist.

Thus, IDI's initial legal premise for its claims of breach of the implied warranties of merchantability and fitness for a particular purpose is unconvincing. The implied warranties were adequately disclaimed in the Agreement, and IDI has failed to provide any legal authority that suggests a failure of the essential purpose of the express warranties revives disclaimed implied warranties.

2. <u>Alstom's Disclaimer of Implied Warranties Is Not Invalidated Even If Alstom First Breached the Agreement</u>

Perhaps recognizing the futility of its initial basis for its claims of breach of the implied warranties, IDI recharacterized its legal premise in its response brief, arguing that "not only did the remedies fail of their essential purpose, but Alstom failed to even provide certain remedies available to IDI." (Pl.'s Br. in Opp'n to Def.'s Mot. for Partial Summ. J. ("Resp. Br.") at 8.) As IDI's argument goes, Alstom was the first party to materially breach the Agreement by failing to provide the express warranties and, consequently, cannot now "seek to enforce the limitations contained within the same contract it breached." (Resp. Br. at 6.)

Indeed, as IDI points out, generally "[a] party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." 6 Ind. Law. Encycl. Contracts § 115 (citing *Illiana Surgery & Med. Ctr., LLC v. STG Funding, Inc.*, 824 N.E.2d 388, 403 (Ind. Ct. App. 2005)); *see Titus v. Rheitone, Inc.*, 758 N.E.2d 85, 94 (Ind. Ct. App. 2001); *Sallee v.*

*Mason*, 714 N.E.2d 757, 762-63 (Ind. Ct. App. 1999). This rule, however, is largely irrelevant in this instance, as *it is IDI* that is bringing the action here for breach of contract, not Alstom; Alstom does not contend that IDI breached the Agreement and is merely raising its disclaimer of implied warranties as a defense. In fact, the only two cases cited by IDI in support of its argument, *Titus* and *Sallee*, are wholly inapposite to the instant circumstances; each stands for the proposition that an employer may not seek to enforce a former employee's non-competition covenant where the employer first materially breached the employment agreement between the parties. *Titus*, 758 N.E.2d 85; *Sallee*, 714 N.E.2d 757. Simply, IDI has provided no legal authority, and the Court has found none in its own research, that suggests this rule extends to preclude a defendant from enforcing its contractual disclaimer of implied warranties in a contract upon which it is being sued.

Furthermore, not only does IDI's reasoning lack the support of legal authority, it is also illogical from a policy perspective. In essence, to adopt IDI's rule would effectively write out of the UCC the whole notion, if not the purpose, of disclaimed implied warranties. The UCC specifically states, however, that "parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies *are to be given effect*." *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 950 (Ind. 2001) (quoting Ind. Code § 26-1-2-719 cmt. 1 (emphasis added)); *Hahn*, 434 N.E.2d at 952 ("[P]arties to a contract are provided broad latitude within which to fashion their own liability and remedies."). To automatically invalidate these agreed-upon remedies upon a breach of the Agreement by either party would undermine the UCC's general principle favoring the parties' freedom of contract, particularly in the instant circumstances where the parties are sophisticated

commercial entities. *Rheem*, 746 N.E.2d at 950.

In the final analysis, as a matter of law no legal premise advanced by IDI serves to invalidate Alstom's disclaimer of the implied warranties in the Agreement. Moreover, we are particularly mindful that "[s]ophisticated commercial actors should be free to allocate risks as they see fit, and courts should not interfere simply because such risks have materialized." *Id.* at 950-51. Consequently, summary judgment will be granted in Alstom's favor with respect to IDI's claims of breach of the implied warranties of merchantability and fitness for a particular purpose.

### B. IDI Is Barred as a Matter of Law from Recovering Consequential and Incidental Damages

IDI asserts in its Complaint that it is entitled to consequential and incidental damages because the remedies afforded by the Agreement failed of their essential purpose. (Compl. ¶¶ 52, 62.) In its response brief, IDI recharacterizes its original assertion, emphasizing instead that "the facts of this case raise the specter of procedural unconscionability." (Resp. Br. at 9.) Alstom disagrees, and rightfully so, as IDI's request for consequential and incidental damages is clearly barred as a matter of law.

Under Indiana law, the enforceability of liability limitations is reviewed independently from any analysis of whether the limited remedies provided by the parties' agreement fail in their essential purpose. *Rheem*, 746 N.E.2d at 947-52. The Indiana Supreme Court has explained: "[T]he drafters of the UCC inserted distinct legal standards into each provision. A limited remedy will be struck when it fails of its essential purpose; an exclusion of consequential damages fails when it is unconscionable." *Id.* at 948. Moreover, "[w]hether a limited remedy fails of its essential purpose is an issue of fact that a jury may determine. Conversely, an

exclusion of consequential damages stands unless it is unconscionable, and unconscionability is determined by a court as a matter of law." *Id*. (citations omitted); *see also* Ind. Code § 26-1-2-302.

1. <u>Alstom's Limitation of Liabilities Is Not Invalidated by a Failure of the Essential Purpose of the Express Warranties</u>

Under this legal precedent, IDI's initial legal premise – that it is entitled to consequential and incidental damages because the express warranties contained in the Agreement failed of their essential purpose – is easily disposed of.[6] Clearly, under Indiana law even if Alstom's express warranties did in fact fail in their essential purpose, the limitation of liabilities contained in the Agreement will "stand unless it is unconscionable." *Rheem*, 746 N.E.2d at 955. Thus, any failure of the essential purpose of the express warranties is immaterial. Consequently, it is not surprising that IDI argues in its response brief that "the facts of this case raise the specter of procedural unconscionability." (Resp. Br. at 9.)

2. <u>On This Record, Alstom's Limitation of Liabilities Is Not Unconscionable as a Matter of Law</u>

Indeed, "[i]f the court as a matter of law finds . . . any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce . . . or . . . limit the application of any unconscionable clause as to avoid any unconscionable result." Ind. Code § 26-1-2-302(1). In determining whether a clause is unconscionable, the Indiana Court of Appeals has recognized the following standard articulated in Ind. Code § 26-1-2-302 cmt. 1:

> The basic test is whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the

---

[6] Again, IDI failed to develop this argument in its response brief, and thus the Court deems IDI to have waived its initial legal premise. *See, e.g.*, *Smith*, 388 F.3d at 569. Nonetheless, the Court will briefly address the point for purposes of completeness since it also fails on the merits.

case 1:06-cv-00357-RBC    document 52    filed 10/15/2007    page 14 of 17

<`></`>

<`></`>

<`></`>

<`></`>

> making of the contract . . . the principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power.

*Hahn*, 434 N.E.2d at 950 (quoting Ind. Code § 26-1-2-302 cmt. 1) (internal citation omitted). This analysis recognizes two branches of unconscionability: substantive, which "refers to oppressively one-sided and harsh terms of a contract," and procedural, which "involves the manner and process by which the terms become part of the contract." *Id*. at 951. "The party raising the issue [of unconscionability] bears the burden of proof." *Id*.

Here, IDI advances its unconscionability challenge solely under the procedural branch. Specifically, it contends that "[t]he procedural unconscionability in this case is the fact that Alstom led IDI down the primrose path, offering temporary fixes despite the disastrous financial impact caused by the failure of the Equipment . . . ." (Resp. Br. at 9.) IDI further alleges:

> Alstom knew that the material used for the tube sheet did not comply with ASME standards and would reduce the quality of the Equipment. Further, when the Equipment immediately started to deteriorate, Alstom offered remedies that it knew were a temporary fix and forced IDI to pay for the majority of the material and the installation. When IDI asked for the return of the purchase price, Alstom refused.

(*Id*. (internal citation omitted).) IDI's unconscionability argument, however, is utterly unavailing.

To explain, "[p]rocedural unconscionability most frequently arises in cases characterized by consumer ignorance," though it may also be found where "[s]eller's guile . . . takes the form of a clause difficult to understand and placed in fine print on the rear of the contract." *Hahn*, 434 N.E.2d at 951 (citation omitted). Here, neither circumstance exists. The parties are ostensibly sophisticated commercial entities; in fact, IDI does not even suggest that Alstom was in a position of superior bargaining power when negotiating the terms of the Agreement. *See*

*Westinghouse*, 418 F. Supp. at 458. Furthermore, the limitation of liabilities provision is not "placed in fine print on the rear of the contract" but is included within the text of the twenty-seven page Agreement that was negotiated by the parties. *See id.* ("[I]t must be emphasized that the contract here in issue is not of the type entered into by the average consumer, but a commercial agreement painstakingly negotiated between industrial giants.").

Moreover, it is significant that this is seemingly not a case where IDI would be left without at least a "minimum adequate remedy" even if the express warranties failed of their essential purpose. *Id.* at 458-59 ("[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available." (quoting UCC § 2-719 cmt. 1)). Under the terms of the Agreement, IDI can recover damages up to $700,000, that is, the full purchase price of the Equipment, which it apparently thought was an adequate remedy when it negotiated the Agreement. The Indiana Court of Appeals has stated "that parties to a contract are provided broad latitude within which to fashion their own liability and remedies" and "[m]odification of warranties and limitations of remedy are not per se unconscionable." *Hahn*, 434 N.E.2d at 952 (citation omitted); *see also Rheem*, 746 N.E.2d at 950-51; *Westinghouse*, 418 F. Supp. at 458 (finding "no reason to disturb the consensual allocation of business risk embodied in the [contract between the parties]").

Finally, and perhaps most importantly, all of the facts alleged by IDI in support of its unconscionability argument occurred *after* the Agreement was entered into by the parties. As stated *supra*, procedural unconscionability "involves the manner and process by which the terms *become part of* the contract." *Hahn*, 434 N.E.2d at 951 (emphasis added); *see* Ind. Code § 26-1-2-302(1) (stating that the offending term be "unconscionable *at the time it was made*" (emphasis

15

added)). Here, IDI has utterly failed to produce any evidence that suggests Alstom acted unconscionably at the time it negotiated the Agreement's terms with IDI. *See generally Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (emphasizing that summary judgment "is the 'put up or shut up' moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events" (citation omitted)).

In sum, it is readily apparent that IDI's argument is without merit. Under Indiana law, the fact that a warranty may have failed of its essential purpose does not affect the validity of an exclusion of consequential and incidental damages. Moreover, IDI has failed to produce even a "specter" of evidence that suggests the limitation of liabilities in the Agreement is unconscionable. Consequently, Alstom's motion for summary judgment to bar the recovery by IDI of consequential and incidental damages in this action will be granted.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Docket # 34) is GRANTED and, consequently:

(1)     Plaintiff's claims for breach of the implied warranties of merchantability and fitness for a particular purpose are dismissed; and

(2)     Plaintiff is not entitled to recover consequential or incidental damages in any

amount.

    SO ORDERED.

    Enter for the 15th day of October, 2007.

<div style="text-align:right">

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge

</div>