UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IRON DYNAMICS, A DIVISION OF STEEL DYNAMICS, INC., f/k/a IRON DYNAMICS, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )   CAUSE NO.  1:06-CV-357 ) |
| ALSTOM POWER, INC., | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court[1] on two motions in limine filed by Defendant Alstom Power, Inc. ("Alstom"), on April 15, 2008, one seeking to limit evidence related to damages (Docket # 61) and the other seeking to exclude any evidence or reference to claims for breach of implied warranties (Docket # 63).  Briefing was completed on the motions on April 30, 2008. (*See* Docket # 70-73.)  The parties then filed supplemental briefs on the topic of damages, disputing, in addition to the issues discussed in the first motion in limine, whether Plaintiff Iron Dynamics is entitled to prejudgment interest.[2] (Docket # 74, 77, 82.)

For the reasons provided, Alstom's motions in limine will each be GRANTED in part and DENIED in part, and because prejudgment interest is not available in this action, evidence concerning that element of damages will also be precluded by this Order.

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] Three additional motions in limine (Docket # 79, 83, 85) have since been filed by the Plaintiff, which the Court will address in a separate order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Plaintiff Iron Dynamics, a division of Steel Dynamics, Inc., f/k/a Iron Dynamics, Inc. ("IDI"), purchased two hot gas recuperators from Alstom for the purchase price of $700,000. (Compl. ¶ 3.) In the purchase agreement for the equipment, Alstom made certain express warranties and performance guarantees to IDI and specifically disclaimed all other warranties and guarantees. (Compl. Ex. A ¶ 14.) In addition, Alstom limited its maximum liability to the purchase price of the equipment and specifically excluded liability for any "loss of profit, loss of use, loss of production, loss of contract or for any financial or economic loss or for any special, incidental, indirect, or consequential damage whatsoever." (Compl. Ex. A ¶ 13.4.1.)

Soon after its installation, IDI realized that the equipment was not functioning in accordance with the specifications and performance guaranties in the agreement and notified Alstom of the problems. (Compl. ¶ 17.) Though Alstom attempted several repairs, IDI contends that the equipment was never adequately repaired and still performs below acceptable standards and, furthermore, that it incurred significant expense trying to make its own repairs. (Compl. ¶¶ 18, 23, 39, 45). Ultimately, IDI requested to exercise the "make good" clause in the agreement and sought the return of the equipment's purchase price from Alstom; IDI's request, however, was to no avail. (Compl. ¶¶ 38, 40.)

Consequently, IDI filed this action against Alstom, alleging that Alstom breached the purchase agreement for the equipment and, in particular, certain implied and express warranties. (Docket # 1.) IDI requested damages of approximately $8.8 million, claiming $862,344.14 for recuperator repairs, $4,870,727.07 for lost revenue, and $3,114,525.38 for excess natural gas

usage. (IDI's Rule 26(a)(1)(A) Disclosures 5, Ex. A.)

On July 2, 2007, IDI moved for partial summary judgment, contending that IDI's claims for breach of the implied warranties of merchantability and fitness for a particular purpose and its request for consequential and incidental damages are barred as a matter of law, since Alstom expressly disclaimed these implied warranties and specifically excluded consequential and incidental damages in the purchase agreement. (Docket # 34.)  On October 15, 2007, the Court granted IDI's motion, dismissing Alstom's claims for breach of implied warranties and precluding Alstom from recovering consequential or incidental damages in any amount. (Docket # 52.)

On April 15, 2008, IDI filed the instant two motions in limine seeking to limit evidence related to damages and to exclude any evidence or reference to claims for breach of implied warranties. (Docket # 61, 63.)  On April 24, 2008, the Court conducted a final pretrial conference with the parties, confirming that the two remaining claims in the suit are breach of warranty and breach of contract claims and that a jury trial will commence on June 2, 2008.[3] (Docket # 68.)  After the conference, the parties filed supplemental briefing on the issue of damages, disputing, in addition to the issues discussed in the first motion in limine, whether IDI is entitled to an award of prejudgment interest. (Docket # 74, 77, 82.)

## II.  NATURE OF AN ORDER IN LIMINE

"A motion in limine is a request for guidance by the court regarding an evidentiary

---

[3] The parties do not dispute that their claims of breach of warranty and breach of contract are governed by Indiana law, specifically Indiana's version of the Uniform Commercial Code. *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 671 (7th Cir. 2002).  Consequently, the Court will "apply the law that we believe the Supreme Court of [Indiana] would apply if the case were before the tribunal rather than before this [C]ourt." *Help at Home Inc. v. Med. Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001).

question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999).  "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

Yet, "a court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds.  Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context." *Id*. (quoting *Hawthorne Partners v. AT & T Techs.*, 831 F. Supp. 1393, 1400 (N.D. Ill. 1993)).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change." *Id*.; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion in limine is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial").  In fact, the Seventh Circuit Court of Appeals has specifically noted that a ruling in limine "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer." *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the District Judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion in limine is not a final ruling on the admissibility of the evidence which is the subject of the motion, *see Wilson*, 182 F.3d at 570-71; rather, an order on a motion in limine is essentially an advisory opinion, "merely speculative in effect." *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984) (emphasis omitted).

4

### III.  ALSTOM'S MOTION IN LIMINE TO LIMIT EVIDENCE RELATED TO DAMAGES AND THE PARTIES' SUPPLEMENTAL BRIEFING ON DAMAGES

IDI requests in its first motion in limine that the Court limit evidence of damages in accordance with the Court's October 15, 2007, Opinion and Order, which dismissed IDI's claims for breach of the implied warranties and precluded IDI from recovering consequential or incidental damages. (Mem. in Supp. of Def.'s Mot. in Limine No. 1 at 1.)  Specifically, Alstom in its first motion in limine requests that the Court (1) exclude all evidence and references related to incidental and consequential damages; (2) exclude all evidence and references related to damages exceeding $700,000; and (3) limit the offer of proof supporting recovery of damages to the difference in the value of the equipment at acceptance and the value of the equipment as warranted, which in no event shall exceed $700,000. (Mem. in Supp. of Def.'s Mot. in Limine No. 1 at 5.)  In their supplemental briefing, the parties expand on certain issues raised in the first motion in limine and also dispute whether prejudgment interest is recoverable in this action.  The Court will address each of the issues concerning damages in turn, beginning with IDI's contention that it is entitled to damages in excess of $700,000.

#### A.  *IDI Is Not Entitled to Damages In Excess of $700,000*

While it acknowledges that the remedy for the breach of warranty claim is limited to $700,000, IDI argues in opposition to Alstom's first motion in limine that it is entitled to *additional* damages for its breach of contract claim, explaining that "Alstom should have provided parts or service for the equipment and failed to do so." (Pl.'s Resp. to Def.'s Mot. in Limine No. 1 at 4-5.)  However, regardless of whether IDI's claims are characterized as breach of warranty or breach of contract claims, its contention that it is entitled to damages in excess of

5

$700,000 is without merit.[4]

To review, the Court concluded in its October 15, 2007, Order granting partial summary judgment that the limitation of liability provision in the agreement is neither unconscionable nor invalidated by a failure of the essential purpose of the express warranties.  This provision provides:

> 13.4.1  OVERALL:  The liability of Seller to Buyer under this Contract shall in no case exceed the Contract Price, or the total amount of payments received by Seller, whichever is less.  Notwithstanding any other provision of this Contract, neither party shall be liable to the other whether by way of indemnity or breach of statutory duty or in contract or in tort (including negligence) or under any other legal theory for loss of profit, loss of use, loss of production, loss of contract or for any financial or economic loss or for any special, incidental, indirect, or consequential damages whatsoever.  The rights, remedies and liabilities of the parties as set out in the Contract shall be to the exclusion of any other rights, remedies or liabilities, whether express or implied, at law or otherwise.

(Compl. Ex. A ¶ 13.4.1.)  In an apparent attempt to circumvent this limitation, IDI now suggests that this provision was intended by the parties to govern only a breach of warranty, *not* a breach of contract claim – that is, that Alstom failed to provide the warranties it promised. (*See* Pl.'s Resp. to Def.'s Mot. in Limine No. 1 at 5 ("The loss suffered by Iron Dynamics occasioned by Alstom's failure to provide the warranties that it promised are separate and distinct from the damages caused by the breach of warranties.").)

---

[4] In connection with its argument seeking damages in excess of $700,000, IDI valiantly attempts to draw a distinction between its breach of contract and breach of warranty claims.  Alstom, however, disputes that such a distinction exists, contending that IDI's "breach of contract claim is truly a breach of warranty claim." (Def.'s Reply in Supp. of Mot. in Limine No. 1 at 6-7.)  While we recognize that breach of contract and breach of warranty actions are not identical, *see Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind. App. 2000), we think at this juncture it is unnecessary to distinguish whether IDI's claims arise from a breach of contract or breach of warranty theory because, as will be discussed *infra* in Section III.B, under either claim IDI's damages are limited to those prescribed in Indiana Code § 26-1-2-714(1) or  (2) for accepted goods.  Having said that, of course,  IDI may not obtain duplicative recovery for breach of warranty and breach of contract claims that are based on the same set of facts. *See, e.g., Fink v. DeClassis*, 745 F. Supp. 509, 515 (N.D. Ill. 1990).

IDI's suggested interpretation of the liability limitation is simply not reasonable.  The provision unambiguously provides that the liability of Alstom to IDI under the agreement "shall in no case exceed the Contract Price," which the parties do not dispute is $700,000, and that the liabilities of the parties as set out in the agreement are to the exclusion of "any other rights, remedies or liabilities, whether express or implied, at law or otherwise." (Compl. Ex. A ¶ 13.4.1); *see George Uzelac & Assocs., Inc. v. Guzik*, 663 N.E.2d 238, 240 (Ind. App. 1996) ("Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning. . . . Where terms are clear and unambiguous, they are conclusive . . . .").  As this Court emphasized in its Order granting partial summary judgment, "[i]f [IDI] deemed recovery of the purchase price inadequate, then it was free to bargain for a more comprehensive remedy." *Martin Rispens & Son v. Hall Farms, Inc*., 621 N.E.2d 1078, 1086 (Ind. 1993), *abrogated on other grounds by Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947 (Ind. 2005).

Indeed, nothing in the limitation of liability provision even suggests that it applies only in the event of a breach of warranty; rather, the provision is broad in scope, precluding liability for any damages in excess of $700,000 that either party incurs, regardless of how they are caused. *See generally United Vaccines, Inc. v. Diamond Animal Health, Inc.*, 409 F. Supp. 2d 1083, 1097-98 (W.D. Wis. 2006) (rejecting plaintiff's argument that the limitation of liability clause was restricted to a breach of warranty, finding that the language of the limited liability provision was broad in scope and thus precluded liability of certain damages regardless of how they were caused); *Brown v. SAP Am., Inc.*, No. C.A. 98-507-SLR, 1999 WL 803888, at *10 (D. Del. Sep. 13, 1999) (finding that the limitation of liability provision, which unambiguously stated that it was the "sole and exclusive remedy" for damages, governed plaintiff's breach of contract and

breach of warranty claims); *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 756 F. Supp. 620, 627 (D. Mass. 1990) (concluding that even though plaintiff's repair costs were direct damages and thus recoverable, repair costs in excess of the purchase price were precluded by the limitation of liability provision).

As a result, IDI's assertion that it is entitled to damages in excess of $700,000 is patently unpersuasive and thus is insufficient to defeat Alstom's first motion in limine.

>   B.  *Only IDI's Consequential and Incidental Damages and Its Damages
>       in Excess of $700,000 That Constitute Repairs or Possibly Excess
>       Natural Gas Usage Are Relevant to the Calculation of Damages*

Nonetheless, IDI advances an additional argument in opposition to Alstom's motion in limine seeking to preclude all evidence of its consequential and incidental damages and its damages in excess of $700,000. IDI asserts that even if this evidence cannot serve as a basis to award damages, it is relevant to establish the value of the equipment under Indiana Code § 26-1-2-714(2) and thus the amount of its damages.

A buyer's damages for breach in regard to accepted goods is governed by Indiana Code § 26-1-2-714.[5] Section 714(2) states that the appropriate measure of damages for breach of an

---

[5] Although IDI's supplemental brief mentions in passing that it purportedly revoked acceptance of the equipment, (*see* Pl.'s Mem. in Supp. of Its Claim for Damages at 5-6), there is no hint of that allegation in its complaint nor, more importantly, any suggestion of it in the pretrial order; principally, there is no recitation of any issue of fact or law relating to revocation. *See* Pretrial Order at 24 ("[T]his order will control the course of the trial and may not be amended except by consent of the parties and the Court or by order of the Court to prevent manifest injustice. The pleadings will be deemed merged herein."); *see generally Leggett & Platt, Inc. v. Yankee Candle Co.*, No. 4:06-CV-366-Y, 2008 WL 723582, at *8 (N.D. Tex. Mar. 18, 2008) (finding that even a conclusory statement in a pretrial order was inadequate to advance a previously unasserted theory of revocation). In fact, in that same supplemental brief, IDI also explicitly stated:

> Iron Dynamics is *not* seeking the return of the purchase price but is seeking its damages which are limited to $700,000.00 by the parties' Contract . . . . Iron Dynamics asserts that it will demonstrate that the difference in value between the Equipment as sold and the Equipment as warranted was far greater than $700,000.00. . . . However, as a result of the contractual limitations . . ., Iron Dynamics' damages in this regard are limited to $700,000.00. That does *not* reflect a return of the purchase price but merely the cap that Alstom placed on its potential exposure.

8

express warranty 'is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.'" *Shroeder*, 969 F.2d at 424 (quoting Ind. Code § 26-1-2-714(2)).  While this method is "the usual, standard and reasonable method of ascertaining damages in the case of breach of warranty[,] . . . it is not intended as an exclusive measure." Ind. Code § 26-1-2-714 cmt. 3.  Alternative methods articulated by Indiana courts to calculate those damages are "(1) the cost to repair, (2) the fair market value of the goods as warranted less the salvage value of the goods, or (3) the fair market value of the goods as warranted at the time of acceptance less the fair market value of the goods as received at the time of acceptance." *Shroeder*, 969 F.2d at 424 (citing *Michiana Mack*, 428 N.E.2d at 1370-71); *see also Cimino v. Fleetwood Enters., Inc.*, No. 1:05-CV-389-TS, 2008 WL 474233, at *15 (N.D. Ind. Feb. 15, 2008); *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning*, 746 N.E.2d 941, 955-56 (Ind. 2001) (articulating that "the cost of repair may serve as a proxy for direct damages").  There also may be occasional cases where the measure of damages for the breach of a limited warranty is the purchase price, though that would not be the case where the goods have at least scrap value. *Cimino*, 2008 WL 474233, at *15 (citing *Michiana Mack*, 428 N.E.2d at

---

(Pl.'s Mem. in Supp. of Its Claim for Damages at 5 (emphasis added).)  Accordingly, revocation of acceptance is not an issue in this case, *see* Fed. R. Civ. P. 16(d), and consequently IDI cannot seek a return of the purchase price under such theory. *See, e.g., Shroeder v. Barth, Inc*., 969 F.2d 421, 424 (7th Cir. 1992) ("[T]he return of the purchase price] is appropriate only when the buyer has rejected the goods or revoked acceptance."); *Michiana Mack, Inc. v. Allendale Rural Fire Prot. Dist.*, 428 N.E.2d 1367, 1371-72 (Ind. App. 1981) ("The remedy of recapture of the purchase price is clearly dependent upon the buyer's rejection or revocation of the goods.").  Thus, evidence of any alleged revocation of the equipment is not relevant under Federal Rule of Evidence 401 and consequently should not be admitted for that purpose. *See* Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *see also* Fed. R. Evid. 403 "[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

9

1370; *Ertel v. Radio Corp. of Am.*, 354 N.E.2d 783, 783-86 (1976)).

In addition, Section 714(1) provides that a buyer may recover damages for any "nonconformity" due to the seller's breach "as determined in any manner which is reasonable." Ind. Code § 26-1-2-714(1). The term "nonconformity" in this section "includes not only breaches of warranties but also any failure of the seller to perform according to his obligations under the contract." Ind. Code § 26-1-2-714 cmt. 2.

"In general, no particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is supported by evidence in the record." *Whiteco Properties, Inc. v. Thielbar*, 467 N.E.2d 433, 438 (Ind. App. 1984); *see also Bob Anderson Pontiac, Inc. v. Davidson*, 293 N.E.2d 232, 404 (Ind. App. 1973) (stating that damages need not be proved by mathematical certainty and that any reasonable manner under the circumstances is permissible). "However, an award may not be based upon mere conjecture, speculation, or guesswork." *Whiteco*, 467 N.E.2d at 438. The plaintiff bears the burden to prove the amount of its damages. *Shroeder*, 969 F.2d at 424.

Considering the foregoing, clearly IDI's repair costs, whether they constitute direct damages, consequential or incidental damages, or are in excess of $700,000, may indeed be relevant for purposes of calculating the value of the equipment pursuant to Section 714(2).[6] *See*

---

[6] Furthermore, the repairs may also be relevant to IDI's assertion that the repair and replacement warranty failed of its essential purpose. *See* Fed. R. Evid. 401; *Pivot Point Int'l, Inc. v. Charlene Prods., Inc*., No. 90 C 6933, 1996 WL 284940, at *2 (N.D. Ill. May 23, 1996) ("The definition of relevance is extremely broad."); *W.R. Grace & Co. v. Viskase Corp*., No. 90 C 5383, 1991 WL 211647, at *1 (N.D. Ill. Oct. 15, 1991) ("[A] trial judge has broad discretion to determine the relevance of proffered evidence."). One method used to decide whether a particular limitation failed of its essential purpose "is to identify the purpose underlying the provision and determine whether application of the remedy in the particular circumstances will further that purpose." *Perry v. Gulf Stream Coach, Inc*., 814 N.E.2d 634, 643 (Ind. App. 2004); *see also Rheem*, 746 N.E.2d at 954 (explaining that "a limited remedy fails when its application 'operates to deprive either party of the substantial value of the bargain'" (quoting Ind. Code § 26-1-2-719)). Since Alstom's warranty included that it would repair or replace defective parts (*see* Compl. Ex. A ¶ 14.2), the amount, nature, and cost of the repairs that IDI ultimately performed on the equipment may indeed

10

*generally Gage v. Metro. Water Reclamation Dist. of Greater Chicago*, 365 F. Supp. 2d 919, 926 (N.D. Ill. 2005) ("In order to exclude evidence on motions *in limine*, . . . the evidence must be inadmissible on all potential grounds.").

Turning to the question of whether the equipment's excessive use of natural gas is relevant and admissible, we first note that such a phenomenon falls into the category of incidental damages; that is, a reasonable expense properly incurred as a result of Alstom's alleged breach. *See Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.*, 709 F.2d 427, 436 n.19 (6th Cir. 1983) (awarding incidental damages for the cost of freon a freezer consumed in excess of the amount that seller had represented). However, incidental damages are excluded by paragraph 13.4.1 in the agreement. Nevertheless, the excessive use of natural gas would presumably be relevant for the limited purpose of showing the "fair market value of the goods as received at the time of acceptance" provided that the use was reasonably incurred and incidental to the alleged breach.[7] *See* Ind. Code § 26-1-2-715(1). On the other hand, we cannot ascertain from the briefs whether this evidence is easily calculable with some precision, or whether its relevance and probative value is substantially outweighed by the factors catalogued in Federal Rule of Evidence 403, such as jury confusion, delay, or waste of time. Accordingly, the Court will exclude this evidence for the time being and will address the topic with counsel at the trial management conference. Of course, if this evidence is admitted, the

---

be relevant to whether IDI was deprived of the substantial value of the agreement. *See Imtiazuddin v. N. Ave. Auto Inc.*, No. 04 C 286, 2004 WL 2418295, at *1 (N.D. Ill. Oct. 27, 2004) ("[I]f evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy and prejudice to be resolved in context.").

[7] For example, a car that is warranted at the time of acceptance as getting thirty miles to the gallon would seemingly have a lower fair market value if in reality it achieved only ten miles to the gallon. *See Shroeder*, 969 F.2d at 424 (citing *Michiana Mack*, 428 N.E.2d at 1370-71); *Cimino*, 2008 WL 474233, at *15.

Court would provide an appropriate limiting instruction.

The question of lost profits, however, also barred by operation of the contract language at paragraph 13.4.1, clearly falls under the label of consequential damages.  Accordingly, what IDI would need to show concerning those damages is more than what it will need for showing excess natural gas usage; in short, IDI would have both a foreseeability and a certainty requirement. *See* 1 James J. White & Robert S. Summers, UNIFORM COMMERCIAL CODE § 10-4(d) (5th ed.).  In that regard, IDI would have to engage in the presentation of evidence wholly apart from what normally would be presented and would offer evidence that does not so neatly translate into a fair market analysis.  Moreover, we would be faced with collateral issues centering on such things as the speculative nature of these damages and the possible allegations that IDI failed to adequately mitigate its alleged losses. *See id*. § 10-4(f).  Accordingly, applying Federal Rule of Evidence 403 to this situation, it would appear that the Court would be faced with a clear case of trying a case within a case and a resulting waste of time.  Accordingly, the motion in limine will be granted for this evidence.

In sum, Alstom's first motion in limine will be granted in part in that all evidence and references related to incidental and consequential damages and damages exceeding $700,000 that do *not* constitute cost of repairs will be precluded, except perhaps the Court may allow evidence of excess natural gas usage under a limiting instruction.

### *C.  The Court Will Not Require IDI to Indicate Prior to Trial Which Alternative Method It Will Use to Calculate Damages*

In its briefing on damages, Alstom, cites and seeks to extend *Shroeder*, 969 F.2d at 423-24, by contending that IDI must prior to trial "indicate which of the alternative methods is to be used to calculate damages." (Def.'s Mem. in Resp. to Pl.'s Mem. in Supp. of Its Claim for

Damages at 5.)

In *Shroeder*, in response to a summary judgment motion, the plaintiffs conclusorily insisted that their damages were the purchase price of the goods, never explaining the method by which they calculated their damages; the Seventh Circuit Court of Appeals then granted summary judgment in the defendant's favor, stating that the plaintiffs "wholly failed to meet their burden to establish their damages, under any of *Michiana Mack's* alternative methods[.]" *Shroeder*, 969 F.2d at 424. Thus, in *Shroeder*, the Court ostensibly granted summary judgment not because the plaintiffs presented alternative methods to calculate their damages, but because they failed to provide evidence *under any method at all*.

Consequently, *Shroeder* does not necessarily stand for the principle that Alstom advances. Furthermore, Alstom has pointed to no other authority, and the Court did not uncover any in its own research, that suggests a plaintiff should be precluded from offering to the jury alternative methods of calculating damages recognized by Indiana courts in connection with Indiana Code § 26-1-2-714.[8] Of course, as stated *supra*, the proposed calculation must be supported by evidence in the record and not based on "mere conjecture, speculation, or guesswork." *Whiteco Properties,* 467 N.E.2d at 438. Indeed, at the end of the day, "[i]t is the [plaintiff's] burden to prove the amount of their damages, and theirs alone." *Shroeder*, 969 F.2d at 424.

Therefore, the Court at this juncture will not require IDI to indicate which of the alternative methods in connection with Indiana Code § 26-1-2-714 that it will use to calculate

---

[8] The interplay between Section 2-714(1) and (2) is somewhat illustrated in White & Summers, UNIFORM COMMERCIAL CODE § 10-4 at 718, and demonstrates that the measure of damages may depend on the "special circumstances" under 2-714(2) that a buyer can show to a jury.

damages.

### D. IDI Is Not Entitled to Prejudgment Interest in this Action

Turning finally to the parties' dispute concerning prejudgment interest, IDI asserts that it is entitled to recover prejudgment interest on its damages and that the $700,000 limitation should not apply to such recovery. (Pl.'s Mem. in Supp. of Its Claim for Damages at 6-8.)  In other words, IDI contends that even if its damages are capped at $700,000, prejudgment interest should be awarded on top of that amount, allowing it to recover in excess of $700,000.  Alstom, of course, disagrees with IDI's assertion.

"The award of prejudgment interest is founded solely upon the theory that there has been a deprivation of the plaintiff's use of money or its equivalent and that unless interest is added, the plaintiff cannot be fully compensated for the loss suffered." *Crawford County Cmty. Sch. Corp. v. Enlow*, 734 N.E.2d 685, 692 (Ind. App. 2000) (citing *Wedge v. Lipps Indus., Inc.*, 575 N.E.2d 332, 336-37 (Ind. App. 1991)).  "Prejudgment interest is recoverable not as interest but as additional damages to accomplish full compensation." *Id*. (citing *Wedge*, 575 N.E.2d at 336-37).  "The crucial factor in determining whether prejudgment interest is proper is whether the damages were ascertainable in accordance with the fixed rules of evidence and accepted standards of valuation at the time the damages accrued." *Wedge*, 575 N.E.2d at 336-37.  "Damages in the form of prejudgement interest are warranted in a contract case if the terms of the contract make the claim ascertainable and the amount of the claim rests upon mere computation." *Crawford*, 734 N.E.2d at 692; *see also Wedge*, 575 N.E.2d at 336-37.

Applying this legal standard to the instant circumstances, it is clear that IDI is not entitled to prejudgment interest.  To explain, the damages in this action do not rest upon a mere

14

computation, as IDI may recover anywhere from $0 to $700,000 at trial.  "[D]amages that are the subject of a good faith dispute cannot allow for an award of prejudgment interest." *Clark v. Hunter*, 861 N.E.2d 1202, 1208 (Ind. App. 2007) (quoting *J.S. Sweet Co. v. White County Bridge Comm'n*, 74 N.E.2d 219, 225 (Ind. App. 1999)).

And, perhaps even more importantly, the limitation of liability language in the agreement, which the Court has concluded is not unconscionable, unambiguously bars recovery of prejudgment interest, stating that "neither party shall be liable to the other . . . for loss of profit, loss of use, loss of production, loss of contract or for any financial or economic loss . . . ." (Compl. Ex. A ¶ 13.4.1.)   Since prejudgment interest is compensation for "deprivation of the plaintiff's use of money," *Crawford*, 734 N.E.2d at 692, such recovery is expressly barred by the limitation of liability clause that precludes liability for "loss of use" or "any financial or economic loss."

In short, IDI is not entitled to prejudgment interest in this action because the amount of damages is not ascertainable and such recovery is expressly barred by the limitation of liability clause in the agreement.

### IV.  ALSTOM'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF CLAIMS FOR BREACH OF IMPLIED WARRANTIES

Alstom's second motion in limine seeks to exclude all evidence or references to claims arising under breach of implied warranties of merchantability and fitness for a particular purpose, and all evidence or references offered to support any contention that (1) the equipment was not fit for the particular purpose for which IDI intended to use it; (2) the equipment was not suitable for use within the actual operating conditions of IDI's plant; (3) Alstom, due to its skill and expertise, had reason to know or should have known that the actual operating conditions of

15

IDI's plant and to which the equipment was actually subjected, were anything different than the operating conditions described by IDI at the time of contracting; and (4) IDI relied upon Alstom's skill and expertise to ascertain whether the equipment, as specified by IDI, would be suitable for operating conditions other than those described by IDI at the time of contracting. (Mem. in Supp. of Def.'s Mot. in Limine No. 2 to Exclude Evidence or Reference to Claims for Breach of Implied Warranties at 7.)  Alstom argues that this evidence is irrelevant since the Court dismissed IDI's claims for breach of the implied warranties when it granted partial summary judgment in Alstom's favor. (Mem. in Supp. of Def.'s Mot. in Limine No. 2 at 1.)

In opposing Alstom's motion, IDI emphasizes that this evidence is not only relevant but is germane to determining whether Alstom satisfied the terms of the express warranty, that is, whether the equipment was "free from any defects in design, engineering, fabrication, materials, or workmanship" when used "under specified operating conditions."[9] (Pl.'s Resp. to Def.'s Mot. in Limine No. 2 at 1-2.)  It further points out that a material dispute clearly exists with respect to whether the equipment was operated under the "specified operating conditions" identified in the express warranty. (Pl.'s Resp. to Def.'s Mot. in Limine No. 2 at 1-2.)

Alstom's second motion in limine has merit in only one respect – that is, its request to preclude any reference to IDI's claim of breach of the implied warranties of merchantability and fitness for a particular purpose.  Frankly, under Federal Rule of Evidence 402, the fact that IDI

---

[9] This section of the warranty provision reads as follows:

> 14.1   Seller hereby warrants that all of the Equipment and other component parts of the Equipment shall be in conformity with the Contract Specifications, shall be new, of first class workmanship and materials, applying applicable standards, and, under specified operating conditions, shall be free from any defects in design, engineering, fabrication, materials, or workmanship.

(Compl. Ex. A ¶ 14.1.)

16

brought a claim for breach of these implied warranties that has since been dismissed is irrelevant; furthermore, its prejudicial effect (that is, that the jury may consider the implied warranties regardless of their dismissal or confuse the implied warranties with the terms of the express warranty) outweighs any probative value under Federal Rule of Evidence 403. Consequently, Alstom's motion will be granted with respect to precluding any reference to the fact that IDI brought or maintained claims arising under the implied warranties.

As to the remainder of Alstom's second motion in limine, it is overbroad and will be denied.  Evidence pertaining to a claim for breach of the implied warranties may *also* be relevant to whether Alstom breached the express warranties.  "A motion in limine should only be granted where the evidence is clearly inadmissible for *any* purpose." *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1087 (N.D. Ill. 2007) (emphasis added).  Moreover, Alstom fails to point to any evidence with particularity and never explains how prejudice would result from its admission. *See Chicago Prime Packers, Inc. v. Northam Food Trading Co.*, No. 01 C 4447, 2003 WL 21704439, at *1 (N.D. Ill. July 22, 2003) ("The movant bears the burden of showing that the evidence that it seeks to preclude is 'clearly inadmissible.'" (citation omitted)).

Furthermore, it is obvious from the briefs that the parties dispute whether the actual operating conditions of Alstom's plant are consistent with the "specified operating conditions" referred to in the warranty provision.  As a result, any evidence of the parties' intent for the "specified operating conditions" at the time of contracting and evidence of the actual operating conditions of IDI's plant is certainly relevant. *See Thompson v. City of Chicago*, 472 F.3d 444, 453 (7th Cir. 2006) ("To be relevant, evidence need not conclusively decide the ultimate issue in a case, nor make the proposition appear more probable, but it must in some degree advance the

17

inquiry." (quotation marks and citation omitted)).  Moreover, there is no indication that any potential prejudice or jury confusion would substantially outweigh the probative value of evidence concerning the "operating conditions" of the equipment.

Consequently, Alstom's second motion in limine will be granted with respect to precluding any reference to the fact that IDI brought or maintained any claims of breach of the implied warranties, but will otherwise be denied.

## V.  CONCLUSION

For the foregoing reasons, Defendant's first motion in limine (Docket # 61) is GRANTED in that all evidence and references related to incidental and consequential damages and damages exceeding $700,000 that do not constitute cost of repairs will be precluded, but the motion is otherwise DENIED.[10]  Defendant's second motion in limine (Docket # 63) is GRANTED in that any reference to the fact that IDI brought or maintained claims of breach of the implied warranties of merchantability and fitness for a particular purpose is hereby precluded; however, the motion is DENIED in all other respects.  As to the parties' supplemental briefing on damages (Docket # 74, 77, 82), Plaintiff is not entitled to recover prejudgment interest in this action and therefore any evidence concerning those damages is likewise irrelevant and precluded.

It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court

---

[10]  The issue of the evidence of excess natural gas usage will be discussed at the trial management conference as noted *supra*.

outside the presence or hearing of the jury.  Counsel are further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

    SO ORDERED.

    Enter for May15, 2008.

                                                                  S/Roger B. Cosbey  
                                                                 Roger B. Cosbey,  
                                                                 United States Magistrate Judge